UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEBA HOUSKIN and FIRST MIDWEST BANK as independent estate administrator of the estate of EMMANUEL DEON REEVES, deceased, | No. 16 C 8645 |
| Plaintiffs, | Judge Thomas M. Durkin |
| v. | |
| SINAI HEALTH SYSTEM d/b/a MT. SINAI HOSPITAL and UNITED STATES OF AMERICA, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Tragically, Emmanuel Deon Reeves was stillborn. Emmanuel's mother, Sheba Houskin, brings claims pursuant to the Illinois Wrongful Death Act and the Illinois Survivor Act, alleging vicarious liability against Mount Sinai Hospital ("Sinai") where Houskin's labor took place, and the United States, which funded some of the medical professionals who provided Houskin's care. Both Defendants have moved to dismiss the Survivor Act claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 109; R. 165. Sinai has moved for partial summary judgment on its alleged vicarious liability for some of the medical professionals involved. R. 169. For the following reasons, both motions are granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must

provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of

evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

Beginning in December 2014, *see* R. 163 ¶ 11, Houskin received prenatal care from the "Access at Sinai" free clinic located on Sinai's "campus." R. 183 at 6 (¶¶ 18-19). On twelve separate occasions during the course of her prenatal care, and as early as April 28, 2015, Houskin signed consent forms which advised the following:

> PHYSICIANS ARE NOT EMPLOYED BY THE HOSPITAL. I understand that the physicians who provide services to me during my stay are not employed or paid by the hospital, and the hospital does not in any way control or direct their care of patients. Rather, these physicians (including, but not limited to, my personal physician, physicians associated with Mount Sinai Community Foundation d/b/a Sinai Medical Group, emergency department physicians, radiologists, pathologists, anesthesiologists, on-call physicians, consulting physicians, surgeons, obstetricians, other specialists and any allied health care providers working with theses physicians) are independent medical practitioners who have been permitted to use the hospital's facilities for the care and treatment of their patients. I understand that each of these independent medical practitioners will bill me separately for their services. My decision to seek care from the hospital is not based upon any understanding, representation or advertisement that the physicians who will be treating me are employees, agents, or apparent agents of the hospital.
>
> I understand that if I wish to know whether or not a specific physician is employed by the hospital, it is my

3

> responsibility to ask that an administrator be called to advise me whether or not that physician is employed by the hospital. I understand that I have the right to select my own physicians and the right to change physicians at any time during my hospitalization (including, but not limited to, my personal physician, physicians associated with Mount Sinai Community Foundation d/b/a Sinai Medical Group, emergency department physicians, radiologists, pathologists, anesthesiologists, on-call physicians, consulting physicians, surgeons, obstetricians, other specialists and any allied health care providers working with theses physicians.) If the nature of the relationship between any physician and the hospital would affect my decision as to whether or not I will accept medical treatment, then I will ask that an administrator be called to inform me of the nature of the relationship between that physician and the hospital.

R. 172 at 6 (¶ 23); R. 183 at 7 (¶ 23).

Of the medical professionals Houskin claims provided her negligent care, Sinai argues that the following doctors are not their agents: Dr. Kalpana Singh, Dr. Connie Moreland, Dr. Osaretin Oronsaye, Dr. Erliene Bautista, Dr. Sarika Arora, Dr. Josef Blankstein, and Dr. Leonard Feinkind. Houskin does not dispute that these medical professionals were not Sinai employees and were employed by entities other than Sinai. R. 172 at 3-4 (¶¶ 1-11); R. 183 at 3-4 (¶¶ 1-11).

Houskin testified that she specifically sought prenatal care from Sinai even though it was not the closest hospital to her home. R. 183 at 9 (¶¶ 2-3). Houskin also testified that the clinic building was identified with signs using the word "Sinai." *Id.* (¶ 4). Houskin's primary prenatal care doctor wore a badge and lab coat that said, "Access at Sinai." R. 201 at 4 (¶ 6). The medical providers who cared for Houskin when she was admitted to Sinai to have labor induced wore badges and clothing that

4

included identifiers with the word "Sinai." *Id.* at 5 (¶ 10). No physician explained to Houskin whether they were employed by Sinai. *Id.* at 9 (¶ 25).

## Analysis

I.  **Wrongful Death Act Claims Against Sinai**

Plaintiffs allege that Sinai is vicariously liable for the emotional damages Plaintiffs suffered due to Emmanuel's death. For Sinai to be vicariously liable, the medical professionals alleged to have been involved in Houskin's prenatal care and labor must be Sinai's agents.

Under Illinois law, agency can be actual or apparent. *See Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993). In *Gilbert*, the Illinois Supreme Court applied the apparent agency doctrine to hold that hospitals can be vicariously liable for the actions of physicians who are actually independent contractors, "if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors." 666 N.E.2d at 796. The court based this decision on the "realities of modern hospital care," including the fact "hospitals increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality health services"; (2) emergency room care, for which hospitals depend on doctors, is a significant part of a hospital's business; and (3) frequently, the "reasonable expectations of the public" includes reliance on the hospital's reputation rather than that of any particular doctor. *See id.* at 793-94.

Plaintiffs concede that none of the doctors at issue in Sinai's motion were Sinai's actual agents, as they are all employees of other entities. *See* R. 184 at 11 n.2. Plaintiffs, however, argue that the doctors are Sinai's apparent agents for the following reasons: (1) the clinic where Houskin sought prenatal care is on Sinai's "campus" and is called "Access at Sinai"; (2) the medical professionals all wore badges that included the word "Sinai"; (3) none of the medical professionals expressly explained to Houskin that they were not employed by Sinai; and (4) Houskin thought she was receiving care from Sinai.

Sinai argues that to the extent these facts are true, they are outweighed as a matter of law by the fact that on twelve different occasions Houskin signed consent forms that clearly and expressly informed her that the doctors treating her were not Sinai employees. In *Gilbert*, the Illinois Supreme Court held that apparent agency can be foreclosed by "informing the patient that the care is provided by independent contractors." 622 N.E.2d at 796. Courts applying *Gilbert's* holding, including this Court, have held that such notice can be provided through consent forms. *See Blanche v. United States*, 2015 WL 1396737, at *4 (N.D. Ill. Mar. 24, 2015) (citing cases). Although some courts have found a question of fact on this issue when the notice provided by the consent form was ambiguous, *see, e.g.*, *Knighten v. United States*, 2008 WL 5244475, at *3 (N.D. Ill. Dec. 16, 2008), Plaintiffs do not contend that the consent form Houskin signed was ambiguous, and the Court perceives no ambiguity.

Plaintiffs also rely on *Davis v. Ingalls Health System*, a non-precedential decision of an Illinois appellate court for which the Illinois Supreme Court denied a

petition for leave to appeal. 2018 WL 2222148 (Ill. App. Ct. 1st Dist. May 11, 2018), *pet. denied*, 108 N.E.3d 848 (Ill. Sept. 26, 2018). In *Davis*, the plaintiff sought care at a hospital emergency room. Plaintiff signed a consent form stating that the doctors were independent contractors. But the doctors wore badges with the hospital's name. *Id.* at *5. Relying on the Illinois Supreme Court's motivating reasoning in *Gilbert*, the court reasoned that this was sufficient to create a question of fact on apparent agency in the circumstances of that case, because plaintiff had "relie[d] upon the hospital to provide complete emergency room care, rather than upon a specific physician." *Id.* at *4 (citing *Gilbert*, 622 N.E.2d at 793-94).

Unlike the plaintiffs in the *Davis* and *Gilbert* cases, however, Houskin did not initially visit Sinai for emergency care. She first visited the Access at Sinai clinic in December 2014 for prenatal care. During a subsequent visit in April 2015, she first signed a consent form informing her that the doctors from whom she would receive care were independent contractors, and not Sinai employees. She then received care from Access at Sinai over the next several months leading up to her labor in August 2015. Over this time period, she signed many other consent forms, which all included the same notice, giving her ample opportunity to inquire about and learn the relationship between her caregivers and Sinai. She signed the same notice when she was admitted to Sinai to have labor induced.

Since the undisputed facts demonstrate that Houskin was informed that the doctors from whom she was receiving care were not employed by Sinai, no reasonable jury could find that Houskin's doctors were Sinai's agents. Therefore, summary

7

judgment is granted to Sinai with respect to its liability for the conduct of Dr. Kalpana Singh, Dr. Connie Moreland, Dr. Osaretin Oronsaye, Dr. Erliene Bautista, Dr. Sarika Arora, Dr. Josef Blankstein, and Dr. Leonard Feinkind.

**II.     Survivor Act Claims**

The Survivor Act allows a decedent's heirs to recover for claims the decedent had while alive. *See* 755 ILCS 5/27-6 ("Actions which survive [include] . . . actions to recover damages for an injury to the person."); *see also Nat'l Bank of Bloomington v. Norfolk & W. Ry. Co.*, 383 N.E.2d 919, 923 (Ill. 1978) ("The Survival Act does not create a statutory cause of action. It merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died."). Under Illinois law, a person cannot accrue causes of action until birth. *See Brucker v Mercola*, 886 N.E.2d 306, 333-34 (Ill. 2007) ("[B]ecause liability does not attach until birth and because there is no right to bring a cause of action until birth, the limitations period cannot begin to run until birth. . . . Nothing would seem more repugnant to basic notions of fundamental fairness than to hold that the clock is ticking on someone's right to file suit during a period in which the law forbids that person from filing suit. . . . Absent some clear expression from the legislature that its intent . . . was to run the repose period against someone who was legally forbidden from going to court and to shorten the time period in which children injured in utero may bring a cause of action, we hold that the repose period . . . cannot begin to run until the child is born.").

8

Here, it is undisputed that Emmanuel was stillborn. Since Emmanuel was not born alive, he cannot have accrued causes of action under Illinois law. And since Emmanuel did not accrue causes of action, he had no causes of action to pass to his estate via the Survivor Act.

Plaintiffs cite a number of cases that consider the legal consequence of injuries suffered in utero, which they argue are a basis to hold that a cause of action can accrue before birth. All of these cases are inapposite. Some were decided under the Wrongful Death Act, which, unlike the Survivor Act, expressly permits recovery for emotional damages by persons affected by the death of an unborn child. *See Seef v. Sutkus*, 583 N.E.2d 510, 511 (Ill. 1991) ("Thus, under the Wrongful Death Act an unborn fetus is recognized as a 'person' and parents may recover damages for 'pecuniary injuries' resulting from the death of the unborn fetus."); *Green v. Smith*, 377 N.E.2d 37, 38-39 (Ill. 1978) (holding that a Wrongful Death Act cause of action exists for the death of a "viable" fetus).[1] Others concerned plaintiffs who were born alive and pursued damages for injuries caused before birth. *See Brucker*, 886 N.E.2d at 308; *Renslow v. Mennonite Hosp.*, 367 N.E.2d 1250, 1252 (Ill. 1977); *Rodriquez v. Patti*, 114 N.E.2d 721, 721 (Ill. 1953); *Amman v. Faidy*, 114 N.E.2d 412, 417 (Ill. 1953) ("plaintiff, as administratrix of the estate of a viable child, who suffered prenatal injuries and was thereafter born alive, has a right of action against the defendant").

---

[1] *See Wyness v. Armstrong World Indus., Inc.*, 546 N.E.2d 568, 571 (Ill. 1989) ("A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death.").

9

None of these cases is contrary to *Brucker's* clear holding that a person cannot accrue causes of action under Illinois law until birth. And Plaintiffs do not contend that Emmanuel was born alive.

Plaintiffs all but concede that they are asking the Court to create a new cause of action under the Survivor Act. *See* R. 180 at 11-12. Plaintiffs argue that because there is no case law directly prohibiting such a cause of action, this Court can extend Illinois common law—in accordance with the authority cited above—to provide for such a cause of action. *Id.* But the Court's province is not so broad as to permit it to create a cause of action simply because no Illinois authority directly prohibits it. Rather, this Court must "decide questions of state law as we predict the Illinois Supreme Court would decide them." *Sutula-Johnson v. Office Depot, Inc.*, 893 F.3d 967, 971 (7th Cir. 2018). Since the Illinois Supreme Court has held that an unborn person cannot accrue an Illinois cause of action, this Court finds it more than likely that the Illinois Supreme Court would not countenance the Survivor Act cause of action Plaintiffs pursue here.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss [109] [165], and Sinai's motion for partial summary judgment [169], are all granted.

Additionally, Sinai has filed a motion (joined by the United States, R. 194) to exclude the testimony of Dr. Yitzchak Frank on Emmanuel's pain and suffering. R. 189. The Court's decision dismissing the Survivor Act claims makes such testimony

10

irrelevant to this case. Therefore, Sinai's motion to exclude expert testimony [189], is denied as moot.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: November 8, 2018